# Exhibit 1

# UNITED STATES DISTRICT COURT
### for the
### Northern District of California

| | | |
|---|---|---|
| VIRGINIA M. LAMBRIX, et al. | ) | Civil Action Nos. 3:23-cv-1145-TLT (Lead Case) |
| *Plaintiff* | ) | 3:23-cv-1496-TLT |
| v. | ) | 3:23-cv-1543-TLT |
| | ) | 3:23-cv-2035-TLT |
| TESLA, INC. | ) | 3:23-cv-2352-TLT |
| *Defendant* | ) | |

## SUBPOENA TO PRODUCE DOCUMENTS, INFORMATION, OR OBJECTS
## OR TO PERMIT INSPECTION OF PREMISES IN A CIVIL ACTION

To: Hendrick Automotive Group, LLC, HAG Automotive Investments, Inc., Attn.: Tax Dep't; 6000 Monroe Road, Charlotte, NC 28212

*(Name of person to whom this subpoena is directed)*

☑ *Production:* **YOU ARE COMMANDED** to produce at the time, date, and place set forth below the following documents, electronically stored information, or objects, and to permit inspection, copying, testing, or sampling of the material: See Attachment A.

| Place: Chaplin & Associates, Inc. | Date and Time: |
|---|---|
| 132 Joe Knox Ave, Suite 100-G<br>Mooresville, NC 28117 | 10/28/2024 5:00 pm |

❏ *Inspection of Premises:* **YOU ARE COMMANDED** to permit entry onto the designated premises, land, or other property possessed or controlled by you at the time, date, and location set forth below, so that the requesting party may inspect, measure, survey, photograph, test, or sample the property or any designated object or operation on it.

| Place: | Date and Time: |
|---|---|
| | |

The following provisions of Fed. R. Civ. P. 45 are attached – Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and (g), relating to your duty to respond to this subpoena and the potential consequences of not doing so.

Date: 09/27/2024

| *CLERK OF COURT* | | |
|---|---|---|
| | OR | |
| _____ | | /s/ Ari Holtzblatt |
| *Signature of Clerk or Deputy Clerk* | | *Attorney's signature* |

The name, address, e-mail address, and telephone number of the attorney representing *(name of party)* Defendant, Tesla, Inc. , who issues or requests this subpoena, are:
Ari Holtzblatt, Wilmer Cutler Pickering Hale and Dorr LLP, 2100 Pennsylvania Avenue NW, Washington, DC 20037, (202) 663-6000, Ari.Holtzblatt@wilmerhale.com

### Notice to the person who issues or requests this subpoena
If this subpoena commands the production of documents, electronically stored information, or tangible things or the inspection of premises before trial, a notice and a copy of the subpoena must be served on each party in this case before it is served on the person to whom it is directed. Fed. R. Civ. P. 45(a)(4).

Civil Action No.

## PROOF OF SERVICE
### *(This section should not be filed with the court unless required by Fed. R. Civ. P. 45.)*

I received this subpoena for *(name of individual and title, if any)* _____

on *(date)* _____ .

❒  I served the subpoena by delivering a copy to the named person as follows: _____

_____ on *(date)* _____ ; or

❒  I returned the subpoena unexecuted because: _____

_____ .

Unless the subpoena was issued on behalf of the United States, or one of its officers or agents, I have also tendered to the witness the fees for one day's attendance, and the mileage allowed by law, in the amount of

$ _____ .

My fees are $ _____ for travel and $ _____ for services, for a total of $ _____ .

I declare under penalty of perjury that this information is true.

Date: _____

_____
*Server's signature*

_____
*Printed name and title*

_____
*Server's address*

Additional information regarding attempted service, etc.:

## Federal Rule of Civil Procedure 45 (c), (d), (e), and (g) (Effective 12/1/13)

**(c) Place of Compliance.**

**(1) For a Trial, Hearing, or Deposition.** A subpoena may command a person to attend a trial, hearing, or deposition only as follows:
  **(A)** within 100 miles of where the person resides, is employed, or regularly transacts business in person; or
  **(B)** within the state where the person resides, is employed, or regularly transacts business in person, if the person
    **(i)** is a party or a party's officer; or
    **(ii)** is commanded to attend a trial and would not incur substantial expense.

**(2) For Other Discovery.** A subpoena may command:
  **(A)** production of documents, electronically stored information, or tangible things at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person; and
  **(B)** inspection of premises at the premises to be inspected.

**(d) Protecting a Person Subject to a Subpoena; Enforcement.**

**(1) Avoiding Undue Burden or Expense; Sanctions.** A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The court for the district where compliance is required must enforce this duty and impose an appropriate sanction—which may include lost earnings and reasonable attorney's fees—on a party or attorney who fails to comply.

**(2) Command to Produce Materials or Permit Inspection.**
  **(A)** Appearance Not Required. A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.
  **(B)** Objections. A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing, or sampling any or all of the materials or to inspecting the premises—or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:
    **(i)** At any time, on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production or inspection.
    **(ii)** These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

**(3) Quashing or Modifying a Subpoena.**
  **(A)** When Required. On timely motion, the court for the district where compliance is required must quash or modify a subpoena that:
    **(i)** fails to allow a reasonable time to comply;
    **(ii)** requires a person to comply beyond the geographical limits specified in Rule 45(c);
    **(iii)** requires disclosure of privileged or other protected matter, if no exception or waiver applies; or
    **(iv)** subjects a person to undue burden.
  **(B)** When Permitted. To protect a person subject to or affected by a subpoena, the court for the district where compliance is required may, on motion, quash or modify the subpoena if it requires:
    **(i)** disclosing a trade secret or other confidential research, development, or commercial information; or

    **(ii)** disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party.
  **(C)** Specifying Conditions as an Alternative. In the circumstances described in Rule 45(d)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:
    **(i)** shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and
    **(ii)** ensures that the subpoenaed person will be reasonably compensated.

**(e) Duties in Responding to a Subpoena.**

**(1) Producing Documents or Electronically Stored Information.** These procedures apply to producing documents or electronically stored information:
  **(A)** Documents. A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.
  **(B)** Form for Producing Electronically Stored Information Not Specified. If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.
  **(C)** Electronically Stored Information Produced in Only One Form. The person responding need not produce the same electronically stored information in more than one form.
  **(D)** Inaccessible Electronically Stored Information. The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

**(2) Claiming Privilege or Protection.**
  **(A)** Information Withheld. A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:
    **(i)** expressly make the claim; and
    **(ii)** describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.
  **(B)** Information Produced. If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information under seal to the court for the district where compliance is required for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

**(g) Contempt.**
The court for the district where compliance is required—and also, after a motion is transferred, the issuing court—may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it.

For access to subpoena materials, see Fed. R. Civ. P. 45(a) Committee Note (2013).

<table>
<tr><td>1</td><td colspan="2">Ari Holtzblatt (SBN 354631)<br>ari.holtzblatt@wilmerhale.com</td></tr>
</table>

Ari Holtzblatt (SBN 354631)
ari.holtzblatt@wilmerhale.com
WILMER CUTLER PICKERING
   HALE AND DORR LLP
2100 Pennsylvania Ave. NW
Washington, DC 20037
Tel: (202) 663-6964

David Gringer (*pro hac vice*)
david.gringer@wilmerhale.com
Andres C. Salinas (*pro hac vice*)
andres.salinas@wilmerhale.com
WILMER CUTLER PICKERING
   HALE AND DORR LLP
7 World Trade Center
250 Greenwich Street
New York, New York 10007
Tel: (212) 230-8864

David C. Marcus (SBN 158704)
david.marcus@wilmerhale.com
WILMER CUTLER PICKERING
   HALE AND DORR LLP
350 South Grand Avenue, Suite 2400
Los Angeles, California 90071
Tel: (213) 443-5312

Allison Bingxue Que (SBN 324044)
allison.que@wilmerhale.com
WILMER CUTLER PICKERING
   HALE AND DORR LLP
2600 El Camino Real, Suite 400
Palo Alto, California 94306
Tel: (650) 858-6000

*Attorneys for Defendant Tesla, Inc.*

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA, SAN FRANCISCO DIVISION

|  |  |
|---|---|
| VIRGINIA M. LAMBRIX, *et al.*, on behalf of themselves and all others similarly situated,<br><br>        Plaintiffs,<br><br>   v.<br><br>TESLA, INC.,<br><br>        Defendant. | Case No. 3:23-cv-1145-TLT (Lead Case)<br>Case No. 3:23-cv-1496-TLT<br>Case No. 3:23-cv-1543-TLT<br>Case No. 3:23-cv-2035-TLT<br>Case No. 3:23-cv-2352-TLT<br><br>**ATTACHMENT A TO HENDRICK AUTOMOTIVE GROUP LLC RULE 45 SUBPOENA** |

This is an attachment to a subpoena pursuant to the authority of the United States District Court for the Northern District of California requiring you to produce certain documents, electronic files, and/or tangible things identified below. This attachment provides definitions, instructions, and specific document commands. The subpoena must be responded to, in writing, within thirty days of service. Please make production to Chaplin & Associates, Inc., 132 Joe Knox Ave, Suite 100-G, Mooresville, NC 28117, or pursuant to alternative arrangement to which all parties subsequently agree.

## DEFINITIONS

1. The definitions and rules of construction set forth in Rules 26 and 45 of the Federal Rules of Civil Procedure are hereby incorporated and apply to the production commands herein.

2. The words "any," "all," "each," or "every" shall mean "any, all, each, and every."

3. The connectives "and" and "or" shall be construed either conjunctively or disjunctively as necessary to bring within the scope of the production commands all information that might otherwise be construed as outside of their scope.

4. The term "body work" refers to any services performed on the non-moving parts of a passenger automobile's physical exterior.

5. "Communication" or "Communications" has the broadest meaning permitted under the Federal Rules of Civil Procedure, and includes any transmission of information two or more persons, whether by, without limitation: personal meeting, telephone, letter, telegraph, e-mail, electronic bulletin board, electronic "chat room," instant message, text message, any other form of electronic correspondence, teleconference, facsimile, telex, or any other means whatsoever.

6. "Complaint" means the Second Consolidated Amended Class Action Complaint filed in the above-captioned case (ECF No. 131), as well as any subsequent amended complaints in the above-captioned case.

7. The word "concerning" and the term "relating to" shall be given the broadest meaning possible, including constituting, referencing, evidencing, reflecting, incorporating, effecting, including, or otherwise referring, pertaining, or relating to, either directly or indirectly, or being in any way logically or factually connected with, the subject matter of the production

1  command.  Commands for "documents concerning" any subject matter include, without limitation,

2  documents concerning communications regarding that subject matter.

3      8.      The word "dealership" means any automobile sales, leasing, or service franchise in

4  the United States.

5      9.      "Document" or "Documents" shall have the broadest meaning permitted under the

6  Federal Rules of Civil Procedure and relevant case law, and shall include without limitation all

7  electronic or computerized data compilations, electronic chats, email communications, other

8  electronically stored information from personal computers, voice recordings, handwritten notes,

9  hard copy documents, all drafts and preliminary copies of any of the foregoing, and all other forms

10  or types of written or printed matter or tangible things on which any words, phrases, or numbers are

11  affixed, however denominated, by whomever prepared, and to whomever addressed, which are in

12  your possession, custody, or control or to which you have, have had, or can obtain access.  A copy

13  or a duplicate of a document that has any notes, annotations, or other markings, and any preliminary

14  version, draft, or revision of any document, shall be considered a separate document within the

15  meaning of this term.

16      10.     The term "electric vehicle" or "EV" refers to any passenger automobile that has an

17  electric motor instead of an internal combustion engine.

18      11.     The term "ICE vehicle" refers to any passenger automobile that has an internal

19  combustion engine.  For purposes of responding to the production commands in this subpoena,

20  "ICE vehicle" includes any "hybrid" vehicle that uses both an internal combustion engine and an

21  electric motor.

22      12.     The words "includes" and "including" shall be construed as non-exhaustive and

23  without limitation, whether or not so specified.

24      13.     The term "maintenance or repair services" refers to all work performed on the

25  interior components or moving parts of a passenger automobile.

26      14.     The term "OEM parts" refers to any replacement automobile parts constructed by

27  the entity that manufactured the original part used when the vehicle was newly constructed.  By

28  contrast, the term "non-OEM parts" refers to any replacement automobile parts made by an entity

other than the entity that manufactured the original part used when the vehicle was newly constructed.

15.     The term "right to repair movement" refers to any person or organization who advocates for the legal right of consumers to freely repair or modify their automobiles, including by requiring manufacturers to make repair information, diagnostic tools, and replacement parts publicly available.

16.     "Tesla" refers to Tesla, Inc., as well as any other subsidiaries or affiliated companies of Tesla, and any of Tesla's agents or employees.

17.     The terms "You," "Your," and "Hendrick" mean Hendrick Automotive Group LLC. as well as any agents, employees, attorneys, and other representative acting on behalf of Hendrick Automotive Group LLC.

18.     The use of the singular form of any word includes the plural and vice versa.

19.     The use of a verb in any particular tense shall be construed as the use of the verb in all other tenses whenever necessary to bring within the scope of a production command any documents or information that you might otherwise construed to be outside the scope of the production command.

20.     The use of date ranges includes the first and last dates of the specified period.

21.     To the extent not defined above, all terms in these production commands shall be given their plain and ordinary meaning.

22.     To the extent these production commands employ terms used in the Complaint, such use is without prejudice to the rights of Tesla.

## **INSTRUCTIONS**

1.     Each document shall be produced in its entirety without redaction or correction and including all attachments, enclosures, cover letters, memoranda, and appendices, except as to privileged information separately discussed below.

2.     Where production of a document is commanded, the command includes all documents in Your possession, custody, or control or in the possession, custody, or control of

Your attorneys, representatives, agents, and other persons under Your control who are reasonably likely to have documents responsive to the production command.

3. In searching for documents or information responsive to any of these production commands, You must search computer or electronic files, e-mails, voicemails, work files, desk files, calendars and diaries, and any other locations and sources where documents or information of the type to be produced might plausibly be expected to be found.

4. The production commands shall be deemed continuing so as to require prompt supplemental responses and production if You obtain or discover additional responsive documents between the time of initial production and the final disposition of the above-captioned action and any appeals.

5. Should You find the meaning of any term in these production commands to be unclear, You should assume a reasonable meaning, state what the assumed meaning is, and respond to the command on the basis of that assumed meaning.

6. If You object to any production command or portion thereof on the ground that You contend that it calls for a Document that is privileged, falls within the work product doctrine, or is otherwise protected from disclosure, provide a privilege log that complies with Federal Rule of Civil Procedure 26(b)(5).

7. If no Documents are responsive to a particular command, You are to state that no responsive Documents exist.

8. If any responsive document has existed, but has since been lost, destroyed, or is no longer within Your possession, custody, or control, identify the document, its author(s), the recipient(s) or addressee(s), the subject matter, and the content. Further, if the document has been destroyed, state with particularity the date and circumstances surrounding the destruction, and identify the last known custodian of the document and each person who has knowledge of the destruction.

9. Unless otherwise specified, the Relevant Time Period for the production commands below is from January 1, 2019 to the present. If You object to a command's scope or time period,

please state Your objection and respond to the command for the scope or time period You believe is appropriate.

10.     Produce all documents in electronic format in accordance with the ESI Protocol (Dkt. 187) attached hereto.

11.     If You require an extension on the return date or wish to confer regarding the scope of these commands, please contact Andres Salinas of WilmerHale at (212) 295-6318 or andres.salinas@wilmerhale.com.

## <u>DOCUMENTS THAT MUST BE PRODUCED</u>

1.     Documents and Communications sufficient to show the scope of competition between You and Tesla for the sale or lease of passenger automobiles, including strategy documents, business plans, competitive assessments, and plans affected by competition from Tesla.

2.     All Documents and Communications concerning competition for the sale or lease of passenger automobiles between You and manufacturers of EVs that do not use franchise dealerships, including any discussion of the viability of the dealership model in light of competition from manufacturers of EVs that do not use franchise dealerships and any discussion of plans to offer passenger automobiles for sale or lease directly to consumers.

3.     All Documents and Communications analyzing or assessing competition between or among EVs and ICE vehicles.

4.     Documents sufficient to show any efforts to lobby for laws restricting or inhibiting the direct sale or lease of passenger automobiles without use of a franchise dealership.

5.     All Documents relating to policies or procedures governing automobile maintenance or repair services performed by Your dealerships or repair centers.

6.     All Documents assessing the ability of any of Your dealerships to perform maintenance or repair services or body work on Tesla vehicles.

7.     All Documents and Communications analyzing or assessing competition for maintenance or repair services on passenger automobiles.

8.      All Documents and Communications analyzing or assessing competition for body work on passenger automobiles.

9.      All Documents relating to policies or procedures regarding the purchase or procurement of OEM parts by any of Your dealerships or repair centers.

10.      All Documents relating to policies or procedures regarding the use of non-OEM parts by any of Your dealerships or repair centers when performing maintenance or repair services on passenger automobiles.

11.      All Documents and Communications analyzing or assessing the advantages or disadvantages of using OEM parts or the advantages or disadvantages of using non-OEM parts when providing maintenance and repair services to consumers.

12.      All Documents and Communications analyzing or assessing competition for the manufacture or sale of replacement automobile parts for EVs.

13.      Documents sufficient to show, on a monthly and annual basis, the profits and losses of any of Your dealerships associated with the (a) sale of automobiles, (b) lease of automobiles, (c) maintenance or repair services, (d) body work, and (e) replacement automobile parts.

14.      Documents sufficient to show, on a monthly basis, the prices (including labor costs and any surcharges) that any of Your dealerships charged to customers for maintenance or repair services, body work, or replacement automobile parts.

15.      All Documents and Communications discussing how the performance of maintenance or repair services or body work by any of Your dealerships affects Your revenue, profits, or losses.

16.      All Documents and Communications analyzing, assessing, or relating to the right to repair movement.

1

2      Dated: September 27, 2024                    WILMER CUTLER PICKERING
                                                    HALE AND DORR LLP
3
                                                    By:    /s/ Ari Holtzblatt
4                                                          Ari Holtzblatt

5                                                   Attorney for Defendant Tesla, Inc.

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

SAVERI & SAVERI, INC.
R. Alexander Saveri (SBN 173102)
706 Sansome Street
San Francisco, CA 94111
Telephone: (415) 217-6810
rick@saveri.com

FREED KANNER LONDON & MILLEN LLC
Matthew W. Ruan (SBN 264409)
Douglas A. Millen (appearing pro hac vice)
Michael E. Moskovitz (appearing pro hac vice)
100 Tri-State International, Suite 128
Lincolnshire, IL 60069
Telephone: (224) 632-4500
mruan@fklmlaw.com
dmillen@fklmlaw.com
mmoskovitz@fklmlaw.com

*Attorneys for Plaintiffs and the Proposed Class*

WILMER CUTLER PICKERING HALE
AND DORR LLP
Ari Holtzblatt (SBN 354631)
2100 Pennsylvania Ave. NW
Washington, DC 20037
Tel: (202) 663-6964
ari.holtzblatt@wilmerhale.com

David Gringer (*pro hac vice*)
7 World Trade Center
250 Greenwich Street
New York, New York 10007
Tel: (212) 230-8864
david.gringer@wilmerhale.com

David Marcus (SBN 158704)
350 S. Grand Ave., Suite 2400
Los Angeles, CA 90071
Tel: (213) 443-5312
david.marcus@wilmerhale.com

*Attorneys for Defendant Tesla, Inc.*

[Additional counsel listed on signature page]

United States District Court
Northern District of California

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA
## SAN FRANCISCO DIVISION

VIRGINIA M. LAMBRIX, *et al.*,

                    Plaintiff,

        v.

TESLA, INC.,

                    Defendant.

Case No. 3:23-cv-1145-TLT

**STIPULATED PROTECTIVE ORDER**

Judge: Hon. Trina L. Thompson

1.    **PURPOSES AND LIMITATIONS**

        Disclosure and discovery activity in this action are likely to involve production of confidential, proprietary, or private information for which special protection from public disclosure and from use for any purpose other than prosecuting this Litigation may be warranted. Accordingly, the parties

1

hereby stipulate to and petition the court to enter the following Stipulated Protective Order. The parties acknowledge that this Order does not confer blanket protections on all disclosures or responses to discovery and that the protection it affords from public disclosure and use extends only to the limited information or items that are entitled to confidential treatment under the applicable legal principles. The parties further acknowledge, as set forth in Section 14.5, below, that this Stipulated Protective Order does not entitle them to file confidential information under seal; Civil Local Rule 79-5 sets forth the procedures that must be followed and the standards that will be applied when a party seeks permission from the court to file material under seal.

**2.    <u>DEFINITIONS</u>**

2.1    <u>Objecting Party</u>: a Party that challenges the designation of information or items under this Order.

2.2    <u>"CONFIDENTIAL" Information or Items</u>: information (regardless of how it is generated, stored, or maintained) or tangible things that: (1) qualify for protection under Federal Rule of Civil Procedure 26(c); (2) contain any trade secret, or other confidential research, development, or commercial information, as such terms are used in Fed. R. Civ. P. 26(c)(1)(G); (3) are prohibited from disclosure by statute; (4) constitute proprietary business, insurance, or financial information that a Party has maintained as confidential; or (5) contain any private personal information. Confidential information includes: (i) information copied or extracted, summarized, or compiled from Confidential Information; and (ii) testimony, conversations, or presentations by Parties or their Counsel that might reveal Confidential Information.

2.3    <u>Counsel (without qualifier)</u>: Outside Counsel of Record and In-House Counsel (as well as their support staff).

2.4    <u>Consultants</u>: consultants involved in a matter pertinent to the Litigation who (1) have been retained by a Party or its Counsel, (2) is not a past or current employee or contractor of a Party (not including their retention in this Litigation) or of a Party's competitor, and (3) at the time of retention, is not anticipated to become an employee or contractor of a Party (not including their retention in this Litigation) or of a Party's competitor.

2

STIPULATED PROTECTIVE ORDER
CASE NO. 3:23-CV-01145-TLT

2.5     <u>Designated House Counsel</u> are In-House Counsel who seek access to "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY" information in this matter.

2.6     <u>Designating Party</u>: a Party or Non-Party that designates information or items that it produces in disclosures or in responses to discovery as "CONFIDENTIAL" or "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY."

2.7     <u>Disclosure or Discovery Material</u>: all items or information, regardless of the medium or manner in which it is generated, stored, or maintained (including, among other things, testimony, transcripts, and tangible things), that are produced or generated in disclosures or responses to discovery in this matter.

2.8     <u>Expert</u>: a person with specialized knowledge or experience in a matter pertinent to the Litigation who (1) has been retained by a Party or its Counsel to serve as an expert witness or as a consultant in this action, (2) is not a past or current employee or contractor of a Party (not including their retention in this Litigation) or of a Party's competitor, and (3) at the time of retention, is not anticipated to become an employee or contractor of a Party (not including their retention in this Litigation) or of a Party's competitor.

2.9     <u>HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY Information or Items</u>: highly sensitive "Confidential Information or Items" that is the subject of reasonable efforts to maintain its secrecy, such that the Designating Party reasonably and in good faith believes disclosure of which to another Party or Non-Party would create a substantial risk of monetary or non-monetary injury (including, for example, competitive or commercial disadvantage) to the Designating Party or its employees, customers, or clients. This includes but is not limited to computer code and associated comments and revision histories, engineering specifications, or schematics that define or otherwise describe in detail the structure of proprietary software or hardware designs.

2.10    <u>In-House Counsel</u>: any attorneys who are employees of a Party to this action, as well as paralegals, secretaries, and clerical and administrative personnel employed by a Party. In-House Counsel excludes Outside Counsel.

2.11   <u>Litigation</u>: the above-captioned *Lambrix et al. v. Tesla, Inc.*, No. 3:23-cv-1145-TLT (N.D. Cal.) and any later-filed actions and/or actions consolidated with *Lambrix*.[1]

2.12   <u>Mock Jurors</u>: mock jurors involved in a matter pertinent to the Litigation who (1) have been retained by a Party or its Counsel, (2) are not past or current employees of a Party or of a Party's competitor, and (3) at the time of retention, are not anticipated to become employees of a Party or of a Party's competitor.

2.13   <u>Non-Party</u>: any natural person, partnership, corporation, association, or other legal entity not named as a Party to this action.

2.14   <u>Outside Counsel</u>: attorneys employed by outside law firms representing a Party in this proceeding, as well as attorney support staff.

2.15   <u>Party</u>: any party to this action, including all its officers, directors, employees, consultants, retained experts, and Outside Counsel (and their support staff).

2.16   <u>Producing Party</u>: a Party or Non-Party that produces Disclosure or Discovery Material in this action.

2.17   <u>Professional Vendors</u>:  persons or entities that provide litigation support services (*e.g.*, photocopying, videotaping, translating, preparing exhibits or demonstrations, and organizing, storing, or retrieving data in any form or medium) and their employees and subcontractors involved in a matter pertinent to the Litigation who (1) have been retained by a Party or its Counsel, (2) are not past or current employees of a Party or of a Party's competitor, and (3) at the time of retention, are not anticipated to become employees of a Party or of a Party's competitor.

2.18   <u>Protected Material</u>: any Disclosure or Discovery Material that is designated as "CONFIDENTIAL" or as "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY."

2.19   <u>Receiving Party</u>: a Party that receives Disclosure or Discovery Material from a Producing Party in the Litigation.

---

[1] Plaintiffs reserve the right to seek modification of this Stipulated Protective Order to encompass any future arbitrations involving claims substantially similar to those raised in this Litigation. Defendant reserves the right to object to such modification.

4
STIPULATED PROTECTIVE ORDER
CASE NO. 3:23-CV-01145-TLT

**3.    SCOPE**

The protections conferred by this Stipulation and Order cover not only Protected Material (as defined above), but also (1) any information copied or extracted from Protected Material; (2) all copies, excerpts, summaries, or compilations of Protected Material; and (3) any testimony, conversations, or presentations by Parties or their Counsel that might reveal Protected Material. However, the protections conferred by this Stipulation and Order do not cover the following information: (a) any information that is in the public domain at the time of disclosure to a Receiving Party or becomes part of the public domain at the time of disclosure to a Receiving Party or becomes part of the public domain after its disclosure to a Receiving Party as a result of publication not in violation of this Order, including becoming part of the public record through trial or otherwise and (b) any information known to the Receiving Party prior to the disclosure or obtained by the Receiving Party after the disclosure from a source who obtained the information lawfully and under no obligation of confidentiality to the Designating Party.  Any use of Protected Material at trial shall be governed by a separate agreement or order.

**4.    DURATION**

Even after final disposition of this Litigation, the confidentiality obligations imposed by this Order shall remain in effect until a Designating Party agrees otherwise in writing or a court order otherwise directs. Final disposition shall be deemed to be the later of (1) dismissal of all claims and defenses in this action, with or without prejudice; and (2) final judgment herein after the completion and exhaustion of all appeals, rehearings, remands, trials, or reviews of this action, including the time limits for filing any motions or applications for extension of time pursuant to applicable law.

**5.    DESIGNATING PROTECTED MATERIAL**

5.1    Exercise of Restraint and Care in Designating Material for Protection. Each Party or Non-Party that designates information or items for protection under this Order must take care to limit any such designation to specific material that qualifies under the appropriate standards.  To the extent it is practical to do so, the Designating Party must designate for protection only those parts of material, documents, items, or oral or written communications that qualify – so that other portions of the

5

STIPULATED PROTECTIVE ORDER
CASE NO. 3:23-CV-01145-TLT

1    material, documents, items, or communications for which protection is not warranted are not swept

2    unjustifiably within the ambit of this Order.

3    Mass, indiscriminate, or routinized designations are prohibited. Designations by any Party that

4    are shown to be clearly unjustified or that have been made for an improper purpose (*e.g.*, to

5    unnecessarily encumber or retard the case development process or to impose unnecessary expenses

6    and burdens on other parties) expose the Designating Party to sanctions.

7    If it comes to a Designating Party's attention that information or items that it designated for

8    protection do not qualify for protection at all or do not qualify for the level of protection initially

9    asserted, that Designating Party must promptly notify all other Parties that it is withdrawing the

10   mistaken designation.

11   5.2    <u>Manner and Timing of Designations</u>.  Except as otherwise provided in this Order (*see,*

12   *e.g.*, the second paragraph of Section 5.2(a) below), or as otherwise stipulated or ordered, Disclosure

13   or Discovery Material that qualifies for protection under this Order must be clearly so designated

14   before the material is disclosed or produced.

15   Designation in conformity with this Order requires:

16   (a)    for information in documentary form (*e.g.*, paper or electronic documents, but

17   excluding transcripts of depositions or other pretrial or trial proceedings), that the Producing Party

18   affix the legend "CONFIDENTIAL" or "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES

19   ONLY" to every page of the document. If only a portion or portions of the material on a page qualifies

20   for protection, the Producing Party also must clearly identify the protected portion(s) (*e.g.*, by making

21   appropriate markings in the margins).

22   A Party or Non-Party that makes original documents or materials available for inspection need

23   not designate them for protection until after the inspecting Party has indicated which material it would

24   like copied and produced. During the inspection and before the designation, all of the material made

25   available for inspection shall be deemed "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES

26   ONLY." After the inspecting Party has identified the documents it wants copied and produced, the

27   Producing Party must determine which documents, or portions thereof, qualify for protection under

28

6
STIPULATED PROTECTIVE ORDER
CASE NO. 3:23-CV-01145-TLT

1  this Order. Then, before producing the specified documents, the Producing Party must affix the

2  appropriate "CONFIDENTIAL" or "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY"

3  legend to each page that contains Protected Material. If only a portion or portions of the material on a

4  page qualifies for protection, the Producing Party also must clearly identify the protected portion(s)

5  (*e.g.*, by making appropriate markings in the margins).

6  (b)  for testimony given in deposition or in other pretrial or trial proceedings, that the

7  Designating Party identify on the record, before the close of the deposition, hearing, or other

8  proceeding, all protected testimony and specify the level of protection being asserted. When it is

9  impractical to identify separately each portion of testimony that is entitled to protection and it appears

10  that substantial portions of the testimony may qualify for protections, the Designating Party may

11  invoke on the record (before the deposition, hearing, or other proceeding is concluded) a right to have

12  up to 30 days after receipt of the final deposition transcript or a copy thereof, identify the specific

13  portions of the testimony as to which protection is sought, to specify the level of protections being

14  asserted. Unless all parties agree otherwise on the record at the time the deposition testimony is taken,

15  all deposition testimony taken in this case shall be treated as Highly Confidential Information for a

16  period of 30 days after the transcript is delivered to the party being deposed. Only those portions of

17  the testimony that are appropriately designed for protection within the 30 days shall be covered by the

18  provisions of this Order. After the expirations of that period, the transcript shall be treated only as

19  actually designated;

20  (c)  A Party shall give the other Parties notice if it reasonably expects a deposition, hearing,

21  or other proceeding to include Protected Material so that all Parties can ensure that only authorized

22  individuals who have signed the "Acknowledgment and Agreement to Be Bound" (Exhibit A) are

23  present at the time Protected Material is discussed. The use of a document as an exhibit at a deposition

24  shall not in any way affect its designation as "CONFIDENTIAL," "HIGHLY CONFIDENTIAL –

25  ATTORNEYS' EYES ONLY."

26  (d)  for information produced in some form other than documentary and for any other

27  tangible items, that the Producing Party affix in a prominent place on the exterior of the container or

28

7

STIPULATED PROTECTIVE ORDER
CASE NO. 3:23-CV-01145-TLT

containers in which the information or item is stored the legend "CONFIDENTIAL" or "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY." If only a portion or portions of the information or item warrant protection, the Producing Party, to the extent practicable, shall identify the protected portion(s). To the extent a document is produced in a form in which placing or affixing the word "CONFIDENTIAL" or "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY" on the document is not practicable, the Producing Party may designate the document as confidential by cover letter or slip sheet, or by affixing a label to the production media containing the document.

(e) Transcripts containing Protected Material shall have an obvious legend on the title page that the transcript contains Protected Material, and the Designating Party shall provide any other Party with a list of all pages (including line numbers as appropriate) designated as Protected Material, including the level of protection being asserted by the Designating Party. The Designating Party shall inform the court reporter of these requirements. In the event that the Designating Party complies with this Order, any error by a court reporter will not constitute a waiver of protection.

5.3     Inadvertent Failures to Designate. If timely corrected, an inadvertent failure to designate qualified information or items does not, standing alone, waive the Designating Party's right to secure protection under this Order for such material.  A Party may correct an inadvertent failure to designate by supplemental written notice, provided that at the time of designation the material must still qualify under this order and applicable legal principles for the protection designation.  Upon timely correction of a designation, the Receiving Party must make reasonable efforts to assure that the material is treated in accordance with the provisions of this Order. No Party shall be found to have violated this Order for failing to maintain the confidentiality of material during a time when that material has not been designated "CONFIDENTIAL" or "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY," even where the failure to so designate was inadvertent and where the

material is subsequently designated "CONFIDENTIAL" or "HIGHLY CONFIDENTIAL –
ATTORNEYS' EYES ONLY."

**6.** **CHALLENGING CONFIDENTIALITY DESIGNATIONS**

6.1     Timing of Challenges. Any Party may challenge a designation of confidentiality at any time. Unless a prompt challenge to a Designating Party's confidentiality designation is necessary to avoid foreseeable, substantial unfairness, unnecessary economic burdens, or a significant disruption or delay of the Litigation, a Party does not waive its right to challenge a confidentiality designation by electing not to mount a challenge promptly after the original designation is disclosed.

6.2     Meet and Confer. The Objecting Party shall initiate the dispute resolution process by providing written notice of each designation it is challenging and describing the basis for each challenge. To avoid ambiguity as to whether a challenge has been made, the written notice must recite that the challenge to confidentiality is being made in accordance with this specific paragraph of the Protective Order and shall identify the Disclosure or Discovery Material at issue by document and/or production number, range, or category or type of documents or information, as applicable, with sufficient specificity that the Designating Party can determine what designations are being challenged, and to the extent practical, shall generally explain why the Challenging Party does not believe the material is entitled to the designation. The parties shall attempt to resolve each challenge in good faith and must begin the process by conferring directly (in voice to voice dialogue; other forms of communication are not sufficient) within 14 days of the date of service of notice. In conferring, the Objecting Party must explain the basis for its belief that the confidentiality designation was not proper and must give the Designating Party an opportunity to review the designated material, to reconsider the circumstances, and, if no change in designation is offered, to explain the basis for the chosen designation. The Objecting Party may proceed to the next stage of the challenge process only if it has engaged in this meet and confer process first or establishes that the Designating Party is unwilling to participate in the meet and confer process in a timely manner.

6.3     Judicial Intervention. If the Parties cannot resolve a challenge without court intervention, the Designating Party shall file and serve a motion to retain confidentiality under Civil

9

STIPULATED PROTECTIVE ORDER
CASE NO. 3:23-CV-01145-TLT

Local Rule 7 (and in compliance with Civil Local Rule 79-5, if applicable) within 21 days of the initial notice of challenge or within 14 days of the parties agreeing that the meet and confer process will not resolve their dispute, whichever is earlier. Each such motion must be accompanied by a competent declaration affirming that the movant has complied with the meet and confer requirements imposed in the preceding paragraph. Failure by the Designating Party to make such a motion including the required declaration within 21 days (or 14 days, if applicable) shall automatically waive the confidentiality designation for each challenged designation. In addition, the Objecting Party may file a motion challenging a confidentiality designation at any time if there is good cause for doing so, including a challenge to the designation of a deposition transcript or any portions thereof. Any motion brought pursuant to this provision must be accompanied by a competent declaration affirming that the movant has complied with the meet and confer requirements imposed by the preceding paragraph.

The burden of persuasion in any such challenge proceeding shall be on the Designating Party. Frivolous challenges, and those made for an improper purpose (*e.g.*, to harass or impose unnecessary expenses and burdens on other parties) may expose the Objecting Party to sanctions. All parties shall continue to afford the material in question the level of protection to which it is entitled under the Producing Party's designation until the court rules on the challenge.

**7.    ACCESS TO AND USE OF PROTECTED MATERIAL**

7.1    Basic Principles. A Receiving Party may use Protected Material that is disclosed or produced by another Party or by a Non-Party in connection with this case only for prosecuting, defending, or attempting to settle this Litigation. Such Protected Material may be disclosed only to the categories of persons and under the conditions described in this Order. When the Litigation has been terminated, a Receiving Party must comply with the provisions of Section 15 below (FINAL DISPOSITION).

Protected Material must be stored and maintained by a Receiving Party at a location and in a secure manner that ensures that access is limited to the persons authorized under this Order.

(a) Each Party must make reasonable efforts to protect the confidentiality of all documents subject to the Protective Order that are disclosed or produced to that Party, including storing all

10

1   documents on secured systems and platforms.

2    (b) Any Party who learns of a breach impacting the integrity or security of such system or

3   platform must promptly notify the disclosing or producing Party of the scope and nature of that breach

4   and make reasonable efforts to remedy the breach.

5    7.2 <u>Disclosure of "CONFIDENTIAL" Information or Items</u>. Unless otherwise ordered by

6   the court or permitted in writing by the Designating Party, a Receiving Party may disclose any

7   information or item designated "CONFIDENTIAL" only to:

8    (a) the Receiving Party's Outside Counsel;

9    (b) the Receiving Party, as an individual named plaintiff or class representative in the

10  Litigation who signs the "Acknowledgment and Agreement to Be Bound" (Exhibit A), shall be

11  permitted to view "CONFIDENTIAL" information to the extent it is reasonably necessary to prosecute

12  their claims, but shall not take possession of such information;

13   (c) the officers, directors, and employees (including In-House Counsel and former

14  employees) of the Parties to whom disclosure is reasonably necessary for this Litigation and who have

15  signed the "Acknowledgment and Agreement to Be Bound" (Exhibit A);

16   (d) Experts of the Receiving Party;

17   (e) the Court and its personnel;

18   (f) court reporters and their staff, professional jury or trial consultants, mock jurors, and

19  Professional Vendors to whom disclosure is reasonably necessary for this Litigation and who have

20  signed the "Acknowledgment and Agreement to Be Bound" (Exhibit A);

21   (g) during their depositions, witnesses who are employees or corporate designees of the

22  Producing Party. Pages of transcribed deposition testimony or exhibits to depositions that reveal

23  Protected Material must be separately bound by the court reporter and may not be disclosed to anyone

24  except as permitted under this Stipulated Protective Order. Witnesses shall not retain a copy of

25  documents containing Confidential Information, except witnesses may receive a copy of all exhibits

26  marked at their depositions in connection with their review of the transcripts(s);

27   (h) the author(s), custodian(s), or recipient(s) of a document containing the information or

28

1    a custodian or other person who otherwise possessed or knew the information.

2         (i)  any mediators, secretaries, paraprofessional assistants, and other employees of such

3    mediators who are actively engaged in assisting the mediators in connection with this matter.

4         (j)  other persons only by written consent of the Producing Party or upon order of the Court

5    and on such conditions as may be agreed or ordered, but such consent shall not be unreasonably

6    withheld.

7         To the extent any person is required to complete the certification contained in Attachment A

8    to this Order, facsimile signatures or signatures transferred in electronic format (*e.g.*, PDF) shall be

9    treated as original signatures for purposes of this Order.

10        7.3. Disclosure of "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY" Information

11   or Items.  No documents or information designated as "HIGHLY CONFIDENTIAL – ATTORNEYS'

12   EYES ONLY" shall be disclosed to any third party, except by written stipulation of the Parties, by

13   order of the Court, or as otherwise provided herein.  Unless otherwise ordered by the court or permitted

14   in writing by the Designating Party, a Receiving Party may disclose any information or item designated

15   "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY" only to:

16        (a)  the Receiving Party's Outside Counsel in this action, as well as employees of said

17   Outside Counsel of Record to whom it is reasonably necessary to disclose the information for this

18   Litigation;

19        (b)  Designated House Counsel of the Receiving Party (1) who has no involvement in

20   competitive decision-making, (2) to whom disclosure is reasonably necessary for this litigation, (3)

21   who has signed the "Acknowledgment and Agreement to Be Bound" (Exhibit A);

22        (c)  Experts of the Receiving Party (1) to whom disclosure is reasonably necessary for this

23   Litigation, (2) who has signed the "Acknowledgment and Agreement to Be Bound" (Exhibit A);

24        (d)  the Court and its personnel;

25        (e)  court reporters and their staff, professional jury or trial consultants, mock jurors, and

26   Professional Vendors to whom disclosure is reasonably necessary for this Litigation and who have

27   signed the "Acknowledgment and Agreement to Be Bound" (Exhibit A);

28
                                             12
                              STIPULATED PROTECTIVE ORDER

(f)  the author(s), custodian(s), or recipient(s) of a document containing the information or a custodian or other person who otherwise possessed or knew the information

(g) during their depositions, witnesses who are 30(b)(6) designees of the Producing Party to whom disclosure is reasonably necessary, provided that counsel for the Party intending to disclose the information has a good faith basis for believing such "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY" is relevant to events, transactions, discussions, communications, or data about which the corporate designee witness is expected to testify or about which the corporate designee witness may have knowledge. Pages of transcribed deposition testimony or exhibits to depositions that reveal Protected Material must be separately bound by the court reporter and may not be disclosed to anyone except as permitted under this Protective Order.

(h) mediators or other alternative dispute resolution neutrals (including their employees, agents, and contractors) to whom disclosure is reasonably necessary to their involvement in the Litigation.

(i) other persons only by written consent of the Producing Party or upon order of the Court and on such conditions as may be agreed or ordered, but such consent shall not unreasonably be withheld.

To the extent any person is required to complete the certification contained in Attachment A to this Order, facsimile signatures or signatures transferred in electronic format (*e.g.*, PDF) shall be treated as original signatures for purposes of this Order.

7.4.    HIGHLY CONFIDENTIAL – SOURCE CODE. In the event that documents that are "HIGHLY CONFIDENTIAL – SOURCE CODE" are contemplated to be produced, the Parties will negotiate a separate protective order to govern such information. This includes extremely sensitive "Confidential Information or Items" representing computer code and associated comments and revision histories, formulas, engineering specifications, or schematics that define or otherwise describe in detail the algorithms or structure of software or hardware designs, disclosure of which to another Party or Non-Party would create a substantial risk of serious harm that could not be avoided by less restrictive means.

13
STIPULATED PROTECTIVE ORDER
CASE NO. 3:23-CV-01145-TLT

1

**8.**     **PROSECUTION BAR**

2

Absent written consent from the Producing Party, any individual who receives access to

3

"HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY" information shall not be involved

4

in the prosecution of patents or patent applications relating to the subject matter of the invention

5

and of highly confidential technical information produced, including without limitation the patents

6

asserted in this action and any patent or application claiming priority to or otherwise related to the

7

patents asserted in this action, before any foreign or domestic agency, including the United States

8

Patent and Trademark Office ("the Patent Office").  For purposes of this paragraph, "prosecution"

9

includes directly or indirectly drafting, amending, advising, or otherwise affecting the scope or

10

maintenance of patent claims.[2]  To avoid any doubt, "prosecution" as used in this paragraph does

11

not include representing a party challenging a patent before a domestic or foreign agency

12

(including, but not limited to, a reissue protest, *ex parte* reexamination or *inter partes*

13

reexamination). This Prosecution Bar shall begin when access to "HIGHLY CONFIDENTIAL –

14

ATTORNEYS' EYES ONLY"  information is first received by the affected individual and shall

15

end two (2) years after final termination of this action.

16

**9.**     **PROTECTED MATERIAL SUBPOENAED OR ORDERED PRODUCED IN OTHER**

17

**LITIGATION**

18

If a Party is served with a subpoena or a court order issued in other litigation that compels

19

disclosure of any information or items designated in this action as "CONFIDENTIAL" or "HIGHLY

20

CONFIDENTIAL – ATTORNEYS' EYES ONLY," that Party must:

21

(a)  promptly notify in writing the Designating Party. Such notification shall include a copy

22

of the subpoena or court order;

23

(b)  promptly notify in writing the party who caused the subpoena or order to issue in the

24

other litigation that some or all of the material covered by the subpoena or order is subject to this

25

Protective Order. Such notification shall include a copy of this Stipulated Protective Order; and

26

_____

27

28

(c)   cooperate with respect to all reasonable procedures sought to be pursued by the Designating Party whose Protected Material may be affected.

If the Designating Party timely seeks a protective order, the Party served with the subpoena or court order shall not produce any information designated in this action as "CONFIDENTIAL" or "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY," before a determination by the court from which the subpoena or order issued, unless the Party has obtained the Designating Party's permission. The Designating Party shall bear the burden and expense of seeking protection in that court of its Protected Material – and nothing in these provisions should be construed as authorizing or encouraging a Receiving Party in this action to disobey a lawful directive from another court.

**10.   A NON-PARTY'S PROTECTED MATERIAL SOUGHT TO BE PRODUCED IN THIS LITIGATION**

(a)   The terms of this Order are applicable to information produced by a Non-Party in this action and designated as "CONFIDENTIAL" or "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY." Such information produced by Non-Parties in connection with this Litigation is protected by the remedies and relief provided by this Order. Nothing in these provisions should be construed as prohibiting a Non-Party from seeking additional protections.

(b)   In the event that a Party is required, by a valid subpoena, court order, or discovery request, to produce a Non-Party's confidential information in its possession, and the Party is subject to an agreement with the Non-Party not to produce the Non-Party's confidential information, then the Party shall:

(1)   promptly notify in writing the Requesting Party and the Non-Party that some or all of the information requested is subject to a confidentiality agreement with a Non-Party;

(2)   promptly provide the Non-Party with a copy of the Stipulated Protective Order in this Litigation, the relevant discovery request(s), and a reasonably specific description of the information requested; and

(3)   make the information requested available for inspection by the Non-Party. This provision is without waiver of a Party's right to object to any discovery request or subpoena seeking

15

STIPULATED PROTECTIVE ORDER
CASE NO. 3:23-CV-01145-TLT

a Non-Party's confidential information in its possession.

(c)  A Non-Party must object or seek a protective order within 14 days of receiving notice and accompanying information, as described in Section 10(b). If the Non-Party fails to timely object or seek a protective order from this Court, the Receiving Party may produce the Non-Party's confidential information responsive to the discovery request. If the Non-Party timely seeks a protective order, the Receiving Party shall not produce any information in its possession or control that is subject to the confidentiality agreement with the Non-Party before a determination by the Court. Absent a court order to the contrary, the Non-Party shall bear the burden and expense of seeking protection in this court of its Protected Material.

**11.    ABSENT CLASS MEMBERS**

Should the Parties propose a class settlement to the Court, the Parties agree to discuss a protocol for sharing any Protected Material contained in a filing with the Court following the procedures set forth herein with any Absent Class Member (or, if represented, with Absent Class Members' counsel).

**12.    UNAUTHORIZED DISCLOSURE OF PROTECTED MATERIAL**

If a Receiving Party learns that, by inadvertence or otherwise, it has disclosed Protected Material to any person or in any circumstance not authorized under this Stipulated Protective Order, the Receiving Party must immediately (a) notify in writing the Designating Party of the unauthorized disclosures and to the extent feasible identify the Bates-labeled number of the unauthorized disclosure, (b) use its best efforts to retrieve all unauthorized copies of the Protected Material, (c) if feasible, inform the person or persons to whom unauthorized disclosures were made of all the terms of this Order, and (d) if feasible, request such person or persons to execute the "Acknowledgment and Agreement to Be Bound" that is attached hereto as Exhibit A.

**13.    INADVERTENT PRODUCTION OF PRIVILEGED OR OTHERWISE PROTECTED**
**MATERIAL**

When a Producing Party gives notice to Receiving Parties that certain inadvertently produced material is subject to a claim of privilege or other protection, the obligations of the Receiving Parties

16
STIPULATED PROTECTIVE ORDER
CASE NO. 3:23-CV-01145-TLT

are those set forth in Federal Rule of Civil Procedure 26(b)(5)(B). This provision is not intended to modify whatever procedure may be established in an e-discovery order that provides for production without prior privilege review. Pursuant to Federal Rule of Evidence 502(d) and (e), insofar as the parties reach an agreement on the effect of disclosure of a communication or information covered by the attorney-client privilege or work product protection, the parties may incorporate their agreement in the stipulated protective order submitted to the Court.

**14.    MISCELLANEOUS**

14.1    <u>Right to Further Relief.</u> Nothing in this Order abridges the right of any person to seek its modification by the court in the future.

14.2    <u>Right to Assert Other Objections.</u> By stipulating to the entry of this Protective Order no Party waives any right it otherwise would have to object to disclosing or producing any information or item on any ground not addressed in this Stipulated Protective Order. Similarly, no Party waives any right to object on any ground to use in evidence of any of the material covered by this Protective Order.

14.3    <u>Export Control</u>. Disclosure of Protected Material shall be subject to all applicable laws and regulations relating to the export of technical data contained in such Protected Material, including the release of such technical data to foreign persons or nationals in the United States or elsewhere. The Producing Party shall be responsible for identifying any such controlled technical data, and the Receiving Party shall take measures necessary to ensure compliance.

14.4    <u>Copy of Order</u>. When discovery is sought from a Non-Party in this action after entry of this Order, a copy of this Order must accompany the discovery request.

14.5    <u>Filing Protected Material.</u> Without written permission from the Designating Party or a court order secured after appropriate notice to all interested persons, a Party may not file in the public record in this action any Protected Material. A Party that seeks to file under seal any Protected Material must comply with Civil Local Rule 79-5. Protected Material may only be filed under seal pursuant to a court order authorizing the sealing of the specific Protected Material at issue. Pursuant to Civil Local Rule 79-5, a sealing order will issue only upon a request establishing that the Protected Material at

17

issue is privileged, protectable as a trade secret, or otherwise entitled to protection under the law. If a Receiving Party's request to file Protected Material under seal pursuant to Civil Local Rule 79‑5(e) is denied by the court, then the Receiving Party may file the Protected Material in the public record pursuant to Civil Local Rule 79‑5(e) unless otherwise instructed by the court.

14.6    Future Parties. The terms of this Order shall be binding upon all current and future parties to this Litigation and their counsel; any party appearing in the Litigation following entry of this Order shall be deemed to have joined the case subject to its provisions.

14.7    Right to Further Relief. Nothing in this Order abridges the right of any person to seek its modification by the Court in the future.

14.8    This Protective Order may be modified by the Court at any time for good cause shown following notice to all parties and an opportunity for them to be heard.

## 15.    **FINAL DISPOSITION**

Within 60 days after the final disposition of this action, as defined in Section 4 (DURATION), each Receiving Party must return all Protected Material to the Producing Party or destroy such material. As used in this subdivision, "all Protected Material" includes all copies, abstracts, compilations, summaries, and any other format reproducing or capturing any of the Protected Material. Whether the Protected Material is returned or destroyed, the Receiving Party must submit a written certification to the Producing Party (and, if not the same person or entity, to the Designating Party) by the 60‑day deadline that (1) identifies (by category, where appropriate) all the Protected Material that was returned or destroyed and (2) affirms that the Receiving Party has not retained any copies, abstracts, compilations, summaries or any other format reproducing or capturing any of the Protected Material. Notwithstanding this provision, Counsel otherwise authorized to receive Protected Material pursuant to this Order are entitled to retain an archival copy of all pleadings, motion papers, trial, deposition, and hearing transcripts, legal memoranda, correspondence, deposition and trial exhibits, expert reports, attorney work product, and consultant and expert work product, even if such materials contain Protected Material. Any such archival copies that contain or constitute Protected Material remain subject to this Protective Order as set forth in Section 4 (DURATION).

1

2   PURSUANT TO STIPULATION, IT IS SO ORDERED.

3

4   DATED:   July 19, 2024

5                                    HON. TRINA L. THOMPSON
                                     United States District Judge

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28
                                    19
                        STIPULATED PROTECTIVE ORDER
                        CASE NO. 3:23-CV-01145-TLT

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**EXHIBIT A**

**ACKNOWLEDGMENT AND AGREEMENT TO BE BOUND**

I, _____ [print or type full name], of _____ [print or type full address], declare under penalty of perjury that I have read in its entirety and understand the Stipulated Protective Order that was issued by the United States District Court for the Northern District of California on [date] in the case of LAMBRIX, *et al.* v. TESLA, INC., Case No. 23-CV-01145-TLT. I agree to comply with and to be bound by all the terms of this Stipulated Protective Order and I understand and acknowledge that failure to so comply could expose me to sanctions and punishment in the nature of contempt. I solemnly promise that I will not disclose in any manner any information or item that is subject to this Stipulated Protective Order to any person or entity except in strict compliance with the provisions of this Order.

I further agree to submit to the jurisdiction of the United States District Court for the Northern District of California for the purpose of enforcing the terms of this Stipulated Protective Order, even if such enforcement proceedings occur after termination of this action.

I hereby appoint _____ [print or type full name] of _____ [print or type full address and telephone number] as my California agent for service of process in connection with this action or any proceedings related to enforcement of this Stipulated Protective Order.

Date: _____

City and State where sworn and signed: _____

Printed name: _____

Signature: _____

United States District Court
Northern District of California

1
STIPULATED PROTECTIVE ORDER
CASE NO. 3:23-CV-01145-TLT

1

2   Dated: <u>July 15, 2024</u>                          <u>/s/ Ari Holtzblatt</u>

3                                                       Ari Holtzblatt (SBN 354631)
                                                        **WILMER CUTLER PICKERING**
4                                                       **HALE AND DORR LLP**
                                                        2100 Pennsylvania Ave. NW
5                                                       Washington, DC 20037
                                                        Tel: (202) 663-6964
6                                                       ari.holtzblatt@wilmerhale.com

7                                                       David Gringer (*pro hac vice*)
                                                        **WILMER CUTLER PICKERING**
8                                                       **HALE AND DORR LLP**
9                                                       7 World Trade Center
                                                        250 Greenwich Street
10                                                      New York, New York 10007
                                                        Tel: (212) 230-8864
11                                                      david.gringer@wilmerhale.com

12                                                      David Marcus (SBN 158704)
13                                                      **WILMER CUTLER PICKERING**
                                                        **HALE AND DORR LLP**
14                                                      350 S. Grand Ave., Suite 2400
15                                                      Los Angeles, CA 90071
                                                        Tel: (213) 443-5312
16                                                      david.marcus@wilmerhale.com

17                                                      Allison Bingxue Que (SBN 324044)
                                                        **WILMER CUTLER PICKERING**
18                                                      **HALE AND DORR LLP**
19                                                      2600 El Camino Real, Suite 400
                                                        Palo Alto, California 94306
20                                                      Tel: (650) 858-6000
                                                        allison.que@wilmerhale.com
21
                                                        Christopher C. Wheeler (SBN 224872)
22                                                      **FARELLA BRAUN + MARTEL LLP**
23                                                      One Bush Street, Suite 900
                                                        San Francisco, California 94104
24                                                      Telephone:  (415) 954-4979
                                                        cwheeler@fbm.com
25
26                                                      *Attorneys for Defendant Tesla, Inc.*

27

28
                                        21
                          STIPULATED PROTECTIVE ORDER

Dated: <u>July 15, 2024</u>

*/s/ Matthew W. Ruan*
Matthew W. Ruan (SBN 264409)
**FREED KANNER LONDON**
**& MILLEN LLC**
100 Tri-State International, Suite 128
Lincolnshire, IL 60069
Telephone: (224) 632-4500
mruan@fklmlaw.com

Douglas A. Millen (*pro hac vice*)
Michael E. Moskovitz (*pro hac vice*)
**FREED KANNER LONDON**
**& MILLEN LLC**
100 Tri-State International, Suite 128
Lincolnshire, IL 60069
Telephone: (224) 632-4500
mruan@fklmlaw.com
dmillen@fklmlaw.com
mmoskovitz@fklmlaw.com

Kimberly A. Justice
**FREED KANNER LONDON**
**& MILLEN LLC**
923 Fayette Street
Conshohocken, Pennsylvania 19428
Telephone: (610) 234-6486
kjustice@fklmlaw.com

*Interim Lead Counsel for the Proposed Class*

R. Alexander Saveri (SBN 173102)
**SAVERI & SAVERI, INC.**
706 Sansome Street
San Francisco, CA 94111
Telephone: (415) 217-6810
rick@saveri.com

*Interim Liaison Counsel for the Proposed*
*Class*

1

2

3  Stuart G. Gross (SBN 251019)
   **GROSS KLEIN PC**

4  The Embarcadero
   Pier 9, Suite 100

5  San Francisco, CA 94111
   Telephone: (415) 671-4628, ext.10

6  sgross@grossklein.com

7  Richard D. McCune
   David C. Wright

8  **McCUNE LAW GROUP, McCUNE**
   **WRIGHT AREVALO VERCOSKI**

9  **KUSEL WECK BRANDT, APC**

10 3281 East Guasti Road, Suite 100
   Ontario, California 91761

11 Tel: (909) 557-1250
   rdm@mccunewright.com

12 dcw@mccunewright.com

13 Derek Y. Brandt
   Leigh M. Perica

14 Connor P. Lemire

15 **McCUNE LAW GROUP, McCUNE**
   **WRIGHT AREVALO VERCOSKI**

16 **KUSEL WECK BRANDT, APC**

17 231 North Main Street, Suite 20
   Edwardsville, IL 62025

18 Tel: (618) 307-6116
   dyb@mccunewright.com

19 lmp@mccunewright.com
   cpl@mccunewright.com

20

21 Jill M. Manning (State Bar No. 178849)
   **PEARSON WARSHAW, LLP**

22 555 Montgomery Street, Suite 1205
   San Francisco, California 94111

23 Telephone: (415) 433-9000
   Facsimile: (415) 433-9008

24 jmanning@pwfirm.com

25 Daniel L. Warshaw (State Bar No. 185365)

26 Michael H. Pearson (State Bar No. 277857)
   **PEARSON WARSHAW, LLP**

27 15165 Ventura Boulevard, Suite 400

28

23

STIPULATED PROTECTIVE ORDER
CASE NO. 3:23-CV-01145-TLT

Sherman Oaks, California 91403
Telephone: (818) 788-8300
Facsimile: (818) 788-8104
dwarshaw@pwfirm.com
mpearson@pwfirm.com

Jon A. Tostrud (State Bar No. 199502)
**TOSTRUD LAW GROUP, P.C.**
1925 Century Park East, Suite 2100
Los Angeles, California 90067
Telephone: (310) 278-2640
Facsimile: (310) 278-2640
jtostrud@tostrudlaw.com

Brian P. Murray
Lee Albert
**GLANCY PRONGAY & MURRAY, LLP**
230 Park Avenue, Suite 358
New York, NY 10169
Telephone: (212) 682-5340
Facsimile: (212) 884-0988
bmurray@glancylaw.com
lalbert@glancylaw.com

Blaine Finley
**CUNEO GILBERT & LADUCA, LLP**
4725 Wisconsin Ave., N.W., Suite 200
Washington, D.C. 20016
Telephone: (202) 789-3960
Facsimile: (202) 589-1813
bfinley@cuneolaw.com

Matthew S. Weiler (SBN 236052)
**SCHNEIDER WALLACE COTTRELL
KONECKY, LLP**
2000 Powell Street, Suite 1400
Emeryville, CA 94608
Telephone: (415) 421-7100
MWeiler@schneiderwallace.com

Michelle C. Clerkin
**SPIRO HARRISON & NELSON**
228 Park Avenue South
New York, NY 10003
Telephone: (917) 634-2244
mclerkin@shnlegal.com

24
STIPULATED PROTECTIVE ORDER
CASE NO. 3:23-CV-01145-TLT

1

2

Peggy Wedgeworth
**MILBERG COLEMAN BRYSON**
**PHILLIPS GROSSMAN**
100 Garden City Plaza
Garden City, NY 11530
Telephone: (646) 515-1269
pwedgeworth@milberg.com

3

4

5

6

7

Arthur Stock
**MILBERG COLEMAN BRYSON**
**PHILLIPS GROSSMAN**
800 S. Gay Street, Suite 1100
Knoxville, TN 37929
Telephone: (865) 247-0080
astock@milberg.com

8

9

10

11

Brian D. Clark
Kyle Pozan
Eura Chang
Stephen J. Teti
**LOCKRIDGE GRINDAL NAUEN**
**P.L.L.P.**
100 Washington Ave S, Suite 2200
Minneapolis, MN 55401
Telephone: (612) 339-6900
Fax: (612) 339-0981
bdclark@locklaw.com
kjpozan@locklaw.com
echang@locklaw.com
sjteti@locklaw.com

12

13

14

15

16

17

18

19

20

William G. Caldes
Jeffrey J. Corrigan
Icee N. Etheridge
**SPECTOR ROSEMAN & KODROFF,**
**P.C.**
2001 Market Street, Suite 3420
Philadelphia, PA 19103
Telephone: (215) 496-0300
Fax: (215) 496-6611
BCaldes@srkattorneys.com
JCorrigan@srkattorneys.com
IEtheridge@srkattorneys.com

21

22

23

24

25

26

27

Garrett D. Blanchfield

28

25

STIPULATED PROTECTIVE ORDER
CASE NO. 3:23-CV-01145-TLT

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Brant D. Penney
**REINHARDT WENORD &**
**BLANCHFIELD**
First National Bank Building, Suite W1050
332 Minnesota Street
St. Paul, MN 55101
Telephone: (651) 287-2100
g.blanchfield@rwblawfirms.com
b.penney@rwblawfirm.com

*Attorneys for Plaintiffs and the Proposed*
*Class*

26
STIPULATED PROTECTIVE ORDER
CASE NO. 3:23-CV-01145-TLT

1

## E-FILING ATTESTATION

2   I, Matthew W. Ruan, am the ECF User whose ID and password are being used to file this

3   document.  In compliance with Civil Local Rule 5‑1(h)(3), I hereby attest that each of the

4   signatories identified above has concurred in this filing.

5

6   _/s/ Matthew W. Ruan_

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

SAVERI & SAVERI, INC.
R. Alexander Saveri (SBNY 173102)
706 Sansome Street
San Francisco, CA 94111
Telephone: (415) 217-6810
rick@saveri.com

FREED KANNER LONDON & MILLEN LLC
Matthew W. Ruan (SBN 264409)
Douglas A. Millen (appearing pro hac vice)
Michael E. Moskovitz (appearing pro hac vice)
100 Tri-State International, Suite 128
Lincolnshire, IL 60069
Telephone: (224) 632-4500
mruan@fklmlaw.com
dmillen@fklmlaw.com
mmoskovitz@fklmlaw.com

*Attorneys for Plaintiffs and the Proposed Class*

WILMER CUTLER PICKERING HALE
AND DORR LLP
Ari Holtzblatt (SBN 354631)
2100 Pennsylvania Ave. NW
Washington, DC 20037
Tel: (202) 663-6964
ari.holtzblatt@wilmerhale.com

David Gringer (*pro hac vice*)
7 World Trade Center
250 Greenwich Street
New York, New York 10007
Tel: (212) 230-8864
david.gringer@wilmerhale.com

David Marcus (SBN 158704)
350 S. Grand Ave., Suite 2400
Los Angeles, CA 90071
Tel: (213) 443-5312
david.marcus@wilmerhale.com

*Attorneys for Defendant Tesla, Inc.*

[Additional counsel listed on signature page]

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA
## SAN FRANCISCO DIVISION

VIRGINIA M. LAMBRIX, *et al.*,

Plaintiff,

v.

TESLA, INC.,

Defendant.

Case No. 23-CV-01145-TLT-PHK

STIPULATED PROTOCOL AND [PROPOSED] ORDER FOR DISCOVERY OF ELECTRONICALLY STORED INFORMATION AND PAPER DOCUMENTS AND SEARCH METHODOLOGY

I. **PURPOSE**

   This Order ("ESI Protocol & Search Methodology Order") will govern discovery of

1

STIPULATED PROTOCOL AND [PROPOSED] ORDER FOR DISCOVERY OF
ELECTRONICALLY STORED INFORMATION AND PAPER DOCUMENTS
AND SEARCH METHODOLOGY
CASE NO. 23-CV-01145-TLT

electronically stored information ("ESI") in this case as a supplement to the Federal Rules of Civil Procedure, this Court's Guidelines for the Discovery of Electronically Stored Information, and any other applicable orders and rules. This binds all parties and their counsel of record in this Action (collectively, the "Parties"). The failure of this Protocol to address any issue is without prejudice to any position that a Party may take on that issue. To the extent that an issue is not addressed by a provision herein, the Federal Rules of Civil Procedure, the Northern District of California eDiscovery Guidelines, and other applicable Standing Orders and Guidelines of this Court control, unless the Parties agree otherwise or ask the Court to decide on a particular issue.

## II.    COOPERATION

The Parties are aware of the importance the Court places on cooperation and commit to cooperate in good faith throughout the matter consistent with the Federal Rules of Civil Procedure and the Court's Guidelines for the Discovery of Electronically Stored Information ("ESI Guidelines"). Section 1.02 of the ESI Guidelines states that the Court expects cooperation on issues relating to the preservation, collection, search, review, and production of ESI, particularly in the earliest possible stages of discovery.

## III.    ESI LIAISONS

**A.**    **Designation**: Each Party has designated an ESI Liaison: Stephen Teti (Plaintiffs) and Arielle Herzberg (Defendant). Any Party is free to change its designated ESI Liaison by providing written notice to the other Parties.

**B.**    **Duties of ESI Liaison**: Each ESI Liaison will be knowledgeable about and responsible for discussing their respective ESI; will be or have reasonable access to personnel who are knowledgeable about the technical aspects of e-discovery, including the location, nature, accessibility, format, collection, search methodologies, and production of ESI in this matter.  The parties will rely on the Liaisons, as needed, to confer about ESI and to help resolve disputes without court intervention.

## IV.    GENERAL PROVISIONS

A.    **Limitations & Non-Waiver:** Pursuant to the terms of this ESI Protocol & Search Methodology Order, information regarding search process and ESI practices may be disclosed, but compliance with this ESI Protocol & Search Methodology Order does not constitute a waiver, by any Party, of any objection to the production of particular ESI for any reason, including that it is irrelevant, undiscoverable, or otherwise inadmissible, unduly burdensome or not reasonably accessible, or privileged, nor does it constitute a waiver of any right to discovery by any Party. Nothing in this ESI Protocol & Search Methodology Order shall be construed to affect the discoverability of information or the admissibility of discoverable information. Nor shall anything in this ESI Protocol & Search Methodology

2

Order be construed to affect the authenticity of any document or data. All objections to the discoverability, admissibility, authenticity, confidentiality, or production of any documents and ESI are preserved and may be asserted at any time. For the avoidance of doubt, a Party's compliance with this ESI Protocol & Search Methodology Order will not be interpreted to require disclosure of information potentially protected by the attorney-client privilege, the work product doctrine, or any other applicable privilege. All Parties preserve all such privileges and protections, and all Parties reserve the right to object to any such privileges and protections.

B.      **Confidential Information:** For the avoidance of doubt, nothing herein shall contradict the Parties' rights and obligations with respect to any information designated as confidential under the Protective Order (Dkt. 178).

C.      **Preservation:** The Parties agree that they shall continue to take reasonable steps to preserve relevant documents and ESI in accordance with their obligations under applicable law. The Parties will meet and confer regarding the scope of preservation, including custodians, data sources, date ranges, and categories of information that have been or should be preserved in connection with this Litigation and those that are not reasonably accessible or need not be preserved because of undue burden or cost or proportionality. By preserving or producing information for the purpose of this Litigation, the Parties are not conceding that such material is discoverable or admissible.

V.      **GENERAL PRODUCTION FORMAT PROTOCOLS**

A.      **TIFFs:** Except for structured data, all production images will be provided as a black-and-white, single-page Group IV TIFF of at least 300 DPI resolution with corresponding multi-page text and necessary load files. Each image will have a file name that is the unique Bates number of that image, pursuant to Paragraph II(E). Original document orientation and attributes should be maintained to the extent reasonably practicable and technologically possible for a producing Party's vendor (*i.e.*, portrait to portrait and landscape to landscape). The imaged data shall retain all attributes of the native or hard-copy file, such as document breaks, to the extent reasonably practicable. To the extent reasonably practicable, produced TIFF images will show all text and images that are visible in the form in which the electronic document was last saved, with the exception of redacted portions. Documents that are difficult to render in TIFF because of technical issues, or any other documents that are impracticable to render in TIFF format, may be produced in their native format with a placeholder TIFF image stating: "Document Produced Natively." A producing Party retains the option to produce ESI in alternative formats, which may include native format, or a combination of native and TIFF formats.

B.      **Text Files:** Each ESI item produced under this ESI Protocol & Search Methodology Order shall be accompanied by a text file as set out below. All text files shall be provided as

STIPULATED PROTOCOL AND [PROPOSED] ORDER FOR DISCOVERY OF
ELECTRONICALLY STORED INFORMATION AND PAPER DOCUMENTS
AND SEARCH METHODOLOGY
CASE NO. 23-CV-01145-TLT-PHK

a single document level text file for each item, not one text file per page. Each text file shall be named to use the Bates number of the first page of the corresponding production item.

    i.  **OCR:** A producing Party shall scan and OCR paper documents. The Parties will endeavor to generate accurate OCR and will utilize OCR processes and technology of sufficient quality to enable the generation of utilizable text files. OCR text files should indicate page breaks where possible. When OCR is used by a producing Party, the Parties acknowledge that, due to poor quality of the originals, not all documents lend themselves to the generation of accurate OCR.  For redacted documents, the document shall undergo OCR after the text has been redacted in order to remove redacted text.

    ii.  **ESI:** With the exception of redacted documents, emails and other ESI will be accompanied by extracted text taken from the electronic file itself, where available. For redacted documents, the text files shall not contain the text of the redacted portions.

**C.**    **Production of Native Items:** Spreadsheet-application files (*e.g.*, MS Excel), presentation files (*e.g.*, MS PowerPoint), personal databases (*e.g.*, MS Access), XML files, and multimedia audio/visual files such as voice and video recordings (*e.g.*, .wav, .mpeg, and .avi), and other documents that are difficult to render in TIFF shall be produced in native format if reasonably practicable. When producing the above file types in native format, the producing Party shall produce a single-page TIFF slip sheet indicating that a native item was produced. The corresponding load file shall include NativeFileLink information for each native file that is produced. Through the pendency of the Litigation, the producing Party shall exercise reasonable, good faith efforts to maintain all preserved and produced native files in a manner that does not materially alter or modify the file or the metadata. Where native items need to be redacted, they may be redacted in their native formats with each redaction clearly indicated, and produced in their native formats.

**D.**    **Requests for Other Native Files:** Other than as specifically set forth above, a producing Party need not produce documents in native format. If a Party would like a particular document produced in native format and this ESI Protocol & Search Methodology Order does not require the production of that document in its native format, the Party making such a request shall explain the reason for its request that the document be produced in its native format. The requesting Party will provide a specific Bates range for documents it wishes to be produced in native format. The parties shall meet and confer to attempt to resolve the problem. Any native files that are produced should be produced with a link in the NativeLink field, along with all extracted text and applicable metadata fields set forth in Appendix 1.

4

STIPULATED PROTOCOL AND [PROPOSED] ORDER FOR DISCOVERY OF<br>ELECTRONICALLY STORED INFORMATION AND PAPER DOCUMENTS<br>AND SEARCH METHODOLOGY<br>CASE NO. 23-CV-01145-TLT-PHK

**E.      Bates Numbering:**

1.      All images must be assigned a Bates number that must always: (1) be unique across the entire document production; (2) maintain a constant prefix and length (ten-digits and 0-padded) across the entire production; (3) contain no special characters, embedded spaces, hyphens, or underscores; (4) be sequential within a given document; and (5) identify the producing Party. To the extent reasonably practicable, the Bates number must also maintain consistent numbering across a family of documents.

2.      If a Bates number or set of Bates numbers is skipped in a production, the producing Party will so note in a cover letter or production log accompanying the production.

3.      The producing Party will brand all TIFF images at a location that does not obliterate or obscure any part of the underlying images.

**F.      Parent-Child Relationships:** Parent-child relationships (*i.e.*, the association between an attachment and its parent document) that have been maintained in the ordinary course of business should be preserved. For example, if a Party is producing a hard copy printout of an email with its attachments, the attachments should be processed in order immediately following the e-mail.

**G.      Entire Document Families:** Subject to Paragraph V(K)(1) below, entire document families must be produced, even if only the parent email or an attachment to an email is responsive, except (1) junk files and non-user-created content routinely excluded during processing, and (2) documents that are properly logged and withheld on the basis of attorney-client privilege or work product protection.

**H.      Load Files:** All production items will be provided with a delimited data file, or "load file," which will include both an image cross-reference load file (such as an Opticon file) and a metadata (.dat) file with the metadata fields identified below on the document level to the extent available. The load file must reference each TIFF in the corresponding production. The total number of documents referenced in a production's data load file should match the total number of designated document breaks in the image load files in the production.

**I.      Color:** Documents or ESI containing color need not be produced initially in color. However, if an original document or ESI item contains color markings and it is necessary to see those markings in their original color to understand the meaning or content of the document, then the requesting Party may, in good faith, request that a reasonable number of documents or ESI items be produced in its original colors. For such documents, the requesting Party shall provide a list of Bates numbers of the imaged documents sought to be produced in color. The production of documents and/or ESI in color shall be made in single-page JPEG format (300 DPI). Requests that a document be produced in color will not be unreasonably denied by the producing Party. If a producing Party wishes to object, it may

5

do so by responding in writing and setting forth its objection(s) to the production of the requested document in color. Documents must be produced in color, or a written objection to their production must be provided, within a reasonable timeframe of receiving a written request as set forth in this Paragraph.

**J.     Confidentiality Designations:** If a particular paper document or ESI item qualifies for confidential treatment pursuant to the terms of the Protective Order entered by the Court in the Litigation (Dkt. 178), or to any applicable federal, state, or common law (*e.g.*, Personally Identifiable Information or Protected Health Information), the designation shall be branded on the document's image at a location that does not obliterate or obscure any part of the underlying images. To the extent reasonably practicable, this designation also should be included in the appropriate data field in the load file. For documents produced in native format with image placeholders, the placeholder image for the native file should be branded with the appropriate confidentiality designation to the extent possible. Requesting Parties shall take reasonable steps to ensure that the confidentiality claim follows the document regardless of whether the designation imprints on the file when viewed in printed form. Failure to comply with the procedures set forth in this ESI Protocol & Search Methodology Order, any protective order or confidentiality order, or any confidential stipulation shall not waive any protection or confidential treatment.

**K.     Redactions**

    **1.     Personal Data Redactions:** A producing Party may redact personal information to the extent that the information falls within one of the following categories:

        a.   the information relates to medical or health issues of an individual; or

        b.   social security numbers, taxpayer-identification numbers, driver's license numbers, birthdates, credit card information, passport numbers, financial-account numbers or other bank account information, or personal passcodes. Such redactions should be identified as "Redacted – Personal Data" on the document.

        c.   Each Party reserves the right to make additional personal data redactions and each Party reserves the right to challenge those redactions.

6
STIPULATED PROTOCOL AND [PROPOSED] ORDER FOR DISCOVERY OF
ELECTRONICALLY STORED INFORMATION AND PAPER DOCUMENTS
AND SEARCH METHODOLOGY
CASE NO. 23-CV-01145-TLT-PHK

Case 3:24-mc-00167-FDW-DCK   Document 2-1   Filed 12/17/24   Page 45 of 58

**L.     Production Media & Protocol:** Documents shall be produced by sharefile or FTP link, unless otherwise agreed by the parties or required to effectuate the production.

## VI.     <u>PAPER DOCUMENT PRODUCTION PROTOCOLS</u>

**A. Scanning:** A producing Party shall scan and OCR paper documents.

**B. Coding Fields:** The following information shall be produced in the load file accompanying production of paper documents produced by scan and OCR to the extent reasonably practicable: (a) BegBates, (b) EndBates, (c) BegAttach, (d) EndAttach, (e) Custodian, (f) Confidentiality, and (g) Redacted (Y/N). Additionally, all paper documents will be produced with a coding field named "Paper Document" marked with a "Y."

**C. Unitization of Paper Documents:** Paper documents should be logically unitized for production to the extent reasonably practicable.

## VII.    <u>ESI METADATA FORMAT AND PROCESSING ISSUES</u>

**A.     System Files:** ESI productions may be de-NISTed using the industry standard list of such files maintained in the National Software Reference Library by the National Institute of Standards & Technology as it exists at the time of de-NISTing.

**B.     Metadata Fields and Processing:** Appendix 1 sets forth the minimum metadata fields that must be produced. To the extent that metadata does not exist, is not reasonably accessible or available or would be unduly burdensome to collect, nothing in the ESI Protocol shall require any party to extract, capture, collect or produce such data, with the exception of the following fields to the extent reasonably practicable: (a) BegBates, (b) EndBates, and (c) Confidentiality, which should be populated regardless of whether the fields can be populated pursuant to an automated process.

**1. Date and Time:** No party shall intentionally modify the date or time as contained in any original ESI.

**2. Auto Date/Time Stamps:** To the extent reasonably practicable if there is an automatic (non-manual) way of doing so without a party needing to find a custom solution, ESI items shall be processed so as to preserve the date/time shown in the document as it was last saved, not the date of collection or processing.

**C.     Redaction:** For redacted documents, text files shall not contain the text of the redacted portions. Any non-privileged metadata fields reasonably available shall be

provided.

**D.    Email Collection and Processing:**

**1.**    **Email Threading:** The Parties may use email thread suppression to review only the most inclusive threads for responsive material..

**2.**    **Email Domains:** Producing Parties may utilize an ESI search process to identify categories of documents, such as emails from domains typically associated with junk email, such as fantasy football-related emails, retailer advertising, and newsletters or alerts from non-industry sources. To the extent a Party opts to exclude uniquely identifiable domain names as part of its initial filter of potentially responsive documents, the Parties agree to disclose domain names excluded under this Paragraph.

**E.    De-duplication:** A producing Party may de-duplicate any file globally (*i.e.*, across document custodians) or horizontally at the "family" level (*i.e.*, families should not be broken due to de-duplication). Each party may also de-duplicate emails in such a way as to eliminate earlier or incomplete chains of emails and therefore produce only the most complete iteration of an email chain.

Duplicate electronic documents shall be identified by a commercially accepted industry standard (*e.g.*, MD5 or SHA-1 hash values) for binary file content. All electronic documents bearing an identical value are a duplicate group. The producing Party shall use reasonable efforts to produce only one document image or native file for duplicate ESI documents within the duplicate group to the extent practicable. The producing Party is not obligated to extract or produce entirely duplicate ESI documents. For any de-duplicated document, the producing Party shall populate the following metadata fields, as set forth in Appendix 1: DupCust, CustodianOther, or CustodianAll.

**F.    Hidden Text:** ESI items shall be processed, in a manner that preserves hidden columns or rows, hidden text, worksheets, speaker notes, tracked changes, and comments.

**G.    Embedded Objects:** Embedded objects will not be processed in such a way that they are extracted, except as to standalone Microsoft Excel, Microsoft Word, or similar documents. Such standalone Microsoft Excel spreadsheets (.xls), Microsoft Word, or similar documents that are embedded in Microsoft Word documents will be extracted as separate documents and treated as attachments to the document using a commercial software that can extract in an automated (non-manual) way. The Parties agree that other embedded objects, including, but not limited to, logos, icons, emoticons, and footers, may be culled from a document set and need not be produced as separate documents by a producing Party (*e.g.*, such embedded objects will be produced within the document itself, rather than as separate attachments).

STIPULATED PROTOCOL AND [PROPOSED] ORDER FOR DISCOVERY OF
ELECTRONICALLY STORED INFORMATION AND PAPER DOCUMENTS
AND SEARCH METHODOLOGY
CASE NO. 23-CV-01145-TLT-PHK

**H.      Hyperlinked Files:** A producing Party will conduct a reasonable search for responsive documents within any folder that employees of the producing Party identify as likely to contain hyperlinked documents responsive to agreed-upon document requests.  To the extent the requesting Party identifies a reasonable number of additional hyperlinks within the documents that the other produces that they wish to examine, the Parties will meet and confer about attempting to obtain this reasonable set of hyperlinked documents.

**I.      Password-Protected, Encrypted, or Proprietary-Software Files:** With respect to any ESI items that are password-protected or encrypted within the scope of review, the producing Party will take reasonable steps based on industry standards to break the protection so that the documents can be reviewed and produced if appropriate. In the event that encrypted or password-protected documents, which a party identifies are reasonably likely to be responsive to a document request, remain for a particular custodian after such reasonable efforts have been made, the producing Party shall advise the requesting Party and identify a reasonable number of such documents for the producing Party to attempt to open. The Parties shall meet and confer regarding the next steps, if any, with respect to such ESI.

**VIII.   SEARCH**

The parties agree that in responding to an initial Fed. R. Civ. P. 34 request, or earlier if appropriate, they will meet and confer about methods to search ESI in order to identify ESI that is subject to production in discovery and filter out ESI that is not subject to discovery.

**A.      Iterative Process:** The producing Party will propose a set of search terms and the requesting Party may provide proposed revisions and additions to the producing Party's search terms within 5 business days.  The Parties will meet and confer on revising the search terms and the Parties will cooperate in good faith regarding the disclosure and formulation of appropriate search terms. The requesting Party shall not unduly delay these negotiations and must respond as soon as practicable regarding search terms in order for the producing Party to be able to meet deadlines. The producing Party and the requesting Party will work together in good faith to reasonably narrow the number of documents returned via search term hits and narrow the number of irrelevant documents captured as a result of the search terms. To the extent any disputes remain concerning the use of specific proposed search terms after good faith negotiations have occurred, either Party may request the assistance of the Court in resolving such disputes, but must proceed with haste so as not to block the producing Party from the ability to meet deadlines. The requesting Party can request the producing Party to consider applying additional search terms and the producing Party is under no obligation to run the terms. The Parties shall engage in good faith negotiations to resolve any disputes regarding a request for application of additional search terms. To the extent such good faith negotiations fail, either Party may request the assistance of the Court in resolving such a dispute.

STIPULATED PROTOCOL AND [PROPOSED] ORDER FOR DISCOVERY OF
ELECTRONICALLY STORED INFORMATION AND PAPER DOCUMENTS
AND SEARCH METHODOLOGY
CASE NO. 23-CV-01145-TLT-PHK

**B.     TAR/CAL:** Should the parties desire to leverage Technology Assisted Review ("TAR") or Continuous Active Learning ("CAL"), search terms may be applied with these technologies.  The Parties will meet and confer on any issues or disputes regarding the use of TAR/CAL.  If a party uses TAR/CAL, it will disclose the following information: (a) the name of the TAR/CAL software and vendor, (b) a general description of the producing Party's TAR/CAL process (c) a general description of the categories or sources of the documents included or excluded from the TAR/CAL process, (d) population in the TAR/CAL model, and (e) what quality control measures will be taken.  The Parties will meet and confer regarding validation procedures, including whether a validation protocol will be needed.

**C.     Structured Data:** To the extent a response to discovery requires production of discoverable ESI contained in a structured database, the Parties shall meet and confer in an attempt to agree upon a set of queries to be made for discoverable information and generate a report in a reasonably usable and exportable electronic file for review by the requesting Party.

**IX.     PHASING**

When a party propounds discovery requests pursuant to Fed. R. Civ. P. 34, the parties agree to phase the production of ESI.  Following the initial production, the parties will continue to prioritize the order of subsequent productions.

**X.     CLAIMS OF PRIVILEGE AND REDACTIONS**

A.     **Production of Privilege Logs:** Except as provided otherwise below, for any document withheld in its entirety, the producing Party will produce privilege logs in MS Excel format or any other format that permits electronic sorting and searching, at a time mutually agreed upon by the parties.

B.     **Exclusions from Logging Potentially Privileged Documents:** The following categories of documents do not need to be contained on a producing Party's privilege log, unless good cause exists to require that a Party do so.

1.     Any communications exclusively between a producing Party and its outside counsel, any non-testifying experts in connection with specific litigation, or, with respect to information protected by Federal Rule of Civil Procedure 26(b)(4), testifying experts in connection with specific litigation.

2.     Any privileged materials or work product created by a Party's outside counsel, any non-testifying experts in connection with specific litigation, or, with respect to information protected by Federal Rule of Civil Procedure 26(b)(4), testifying experts in connection with specific litigation.

10

STIPULATED PROTOCOL AND [PROPOSED] ORDER FOR DISCOVERY OF
ELECTRONICALLY STORED INFORMATION AND PAPER DOCUMENTS
AND SEARCH METHODOLOGY
CASE NO. 23-CV-01145-TLT-PHK

C.      **Privilege Log Requirements:**

1.      To the extent applicable, each Party's privilege log must provide objective metadata (to the extent it is reasonably available and does not reflect privileged or protected information), an indication of the privilege or protection being asserted, identify any associated persons who are attorneys, and provide a brief description of the privileged or protected material.

a.      Objective metadata includes the following (as applicable to the document types as shown in Appendix 1):

i.    A unique privilege log identifier

ii.   Custodian

iii.  CustodianOther or CustodianAll (if applicable)

iv.   File Name (unless privileged itself)

v.    Email Subject (unless privileged itself)

vi.   Author

vii.  From

viii. To

ix.   CC

x.    BCC

xi.   Date Sent

xii.  Time Sent

xiii. Date Received

xiv.  Date Created

xv.   Bates Number (for documents produced as WIF slipsheets)

b.      In addition to the objective metadata fields, a Party must also:

i.    Indicate which privilege or protection is being asserted;

ii.   To the extent such information is not contained in the objective metadata for a document that the responding Party has identified as significant, a responding Party can request that the producing Party provide the author and date of the document, and the parties will meet and confer about adding such information manually.

11
STIPULATED PROTOCOL AND [PROPOSED] ORDER FOR DISCOVERY OF
ELECTRONICALLY STORED INFORMATION AND PAPER DOCUMENTS
AND SEARCH METHODOLOGY
CASE NO. 23-CV-01145-TLT-PHK

iii.  Identify which persons associated with the document (*i.e.*, senders, recipients, or authors) are attorneys; and

iv.  Provide a brief description of the privileged or protected material.

c.  With respect to the "Email Subject" or "File Name" field, the producing Party may substitute a description of the document where the contents of these fields may reveal privileged information. In the privilege log(s), the producing Party shall identify each instance in which it has modified the content of the "Email Subject" or "File Name" field.

D.  **Documents Redacted for Privilege:** Redacted documents need not be logged as long as the nature of the privilege asserted is noted on the face of the document in the redacted area. Furthermore, for emails, the objective metadata (*i.e.*, to, from, cc, bcc, recipients, date, and time) shall not be redacted, unless the privilege or protection is contained in these fields. In accordance with this Paragraph, the producing Party will undertake reasonable efforts to make limited, line-by-line redactions of privileged or work product information. After receipt of the production, the requesting Party may request in good faith that the producing Party create a privilege log for specific redacted documents, by Bates number, if the basis for the redaction is not clearly indicated on the document. Electronic documents that are redacted shall be identified as such in a "redaction" field in the accompanying data load file.

E.  **Challenges to Privilege Claims:** Following the receipt of a privilege log or redacted document, a requesting Party may identify, in writing (by Bates/unique identification number), the particular documents that it believes require further explanation. The producing Party shall respond to such a request. If the Parties cannot arrive at a mutually agreeable solution, then the matter may be brought to the Court.

XI.  **CLAWBACK ORDER**

**A. Non-Waiver:** Pursuant to Federal Rule of Evidence 502(d), the production of any documents and accompanying metadata ("Protected Documents"), protected from discovery, including under the attorney-client privilege, work product doctrine, opinion work product doctrine, the joint defense or common interest privilege, privacy laws and regulations, or any other immunity from discovery (collectively, "privilege or protection"), shall not be deemed to waive any privilege or protection, including subject matter waiver, associated with such Protected Documents as to the receiving party or any third parties in this or in any other state or federal proceeding solely by virtue of such production or disclosure. Nothing in this Paragraph is intended to or shall serve to limit a Party's right to conduct a review of any material or information for relevance, responsiveness, and/or segregation of privileged and/or protected information before production.

12

STIPULATED PROTOCOL AND [PROPOSED] ORDER FOR DISCOVERY OF
ELECTRONICALLY STORED INFORMATION AND PAPER DOCUMENTS
AND SEARCH METHODOLOGY
CASE NO. 23-CV-01145-TLT-PHK

**B.  Assertion of a Clawback:** Any Party or non-Party may request the return of any Protected Document(s) on the grounds of privilege or protection by identifying it, stating the basis for withholding such material or information from production, and providing any other information that would be listed on a supplemental privilege log, subject to Paragraph XI(C) below.

**C.  Clawback Process:** Federal Rule of Civil Procedure 26(b)(5)(B) shall govern the clawback of Protected Documents on the grounds of privilege or protection. If a Party or non-Party requests the return of such a Protected Document then in the custody of one or more Parties, the possessing Parties shall within 7 business days:

1.    Destroy or return to the requesting Party or non-Party the Protected Document(s) and all copies thereof, and expunge from any other document or material information derived solely from the produced material or information; or

2.    Notify the producing Party or non-Party that it wishes to challenge the claim of privilege or protection and has sequestered the material until the issue can be resolved. The Parties agree to meet and confer within 3 days regarding the claim of privilege or protection. If, at the conclusion of the meet and confer process, the Parties are still not in agreement, they may bring the issue to the Court. A Party challenging a clawback request under this Paragraph may use the content of the clawed-back document for the sole purpose of filing a motion with the Court under seal, consistent with Local Rule 5, that challenges whether or not the document is privileged or protected.

**D.  Implementation of a Clawback:** Where a Party agrees to or is ordered to destroy a clawed back document, the Party must instruct their e-discovery vendor to delete the document entirely from their e-discovery database and delete other copies of the clawed back document. To the extent that it is not technologically feasible for a receiving Party to destroy a clawed back document (for example, if the clawed-back document is part of a production provided on read-only Production Media such that the clawed-back document cannot be destroyed without destroying the entire Production Media), the Parties will meet and confer as to an acceptable alternative approach.

**XII.   MODIFICATION**

This Stipulated Order may be modified by a Stipulated Order of the parties or by the Court for good cause shown.

IT IS SO STIPULATED, through Counsel of Record.

13

STIPULATED PROTOCOL AND [PROPOSED] ORDER FOR DISCOVERY OF
ELECTRONICALLY STORED INFORMATION AND PAPER DOCUMENTS
AND SEARCH METHODOLOGY
CASE NO. 23-CV-01145-TLT-PHK

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Dated: August 16, 2024

*/s/ Ari Holtzblatt*
Ari Holtzblatt (SBN 354631)
**WILMER CUTLER PICKERING
HALE AND DORR LLP**
2100 Pennsylvania Ave. NW
Washington, DC 20037
Tel: (202) 663-6964
ari.holtzblatt@wilmerhale.com

David Gringer (*pro hac vice*)
**WILMER CUTLER PICKERING
HALE AND DORR LLP**
7 World Trade Center
250 Greenwich Street
New York, New York 10007
Tel: (212) 230-8864
david.gringer@wilmerhale.com

David Marcus (SBN 158704)
**WILMER CUTLER PICKERING
HALE AND DORR LLP**
350 S. Grand Ave., Suite 2400
Los Angeles, CA 90071
Tel: (213) 443-5312
david.marcus@wilmerhale.com

Allison Bingxue Que (SBN 324044)
**WILMER CUTLER PICKERING
HALE AND DORR LLP**
2600 El Camino Real, Suite 400
Palo Alto, California 94306
Tel: (650) 858-6000
allison.que@wilmerhale.com

Christopher C. Wheeler (SBN 224872)
**FARELLA BRAUN + MARTEL LLP**
One Bush Street, Suite 900
San Francisco, California 94104
Telephone:  (415) 954-4979
cwheeler@fbm.com

*Attorneys for Defendant Tesla, Inc.*

14
STIPULATED PROTOCOL AND [PROPOSED] ORDER FOR DISCOVERY OF
ELECTRONICALLY STORED INFORMATION AND PAPER DOCUMENTS
AND SEARCH METHODOLOGY
CASE NO. 23-CV-01145-TLT-PHK

1

2   Dated: August 16, 2024                    /s/ Matthew W. Ruan
                                             Matthew W. Ruan (SBN 264409)
3                                            **FREED KANNER LONDON**
                                             **& MILLEN LLC**
4                                            100 Tri-State International, Suite 128
                                             Lincolnshire, IL 60069
5                                            Telephone: (224) 632-4500
                                             mruan@fklmlaw.com
6
                                             *Counsel for Plaintiffs and Interim Lead*
7                                            *Counsel for the Proposed Class*

8
                                             /s/ Stephen J. Teti
9   Dated: August 16, 2024
                                             Stephen J. Teti (*pro hac vice*)
10                                           **LOCKRIDGE GRINDAL NAUEN PLLP**
                                             265 Franklin Street, Suite 1702
11                                           Boston, MA 02110
                                             Telephone: (617) 456-7701
12                                           sjteti@locklaw.com

13                                           *Counsel for Plaintiffs*

14

15  PURSUANT TO STIPULATION, IT IS SO ORDERED.

16

17
    DATED: _____    August 26, 2024    _____
18
                                             HON. PETER H. KANG
19                                           United States Magistrate Judge

20

21

22

23

24

25

26                                    15
    STIPULATED PROTOCOL AND [PROPOSED] ORDER FOR DISCOVERY OF
27  ELECTRONICALLY STORED INFORMATION AND PAPER DOCUMENTS
                        AND SEARCH METHODOLOGY
28                  CASE NO. 23-CV-01145-TLT-PHK

# Appendix 1: ESI Metadata and Coding Fields

| Field Name[1] | Populated For (*Email, Edoc, Calendar, Contact, Cellphone, or All*) | Field Description |
|---|---|---|
| BegBates | All | Control Numbers. |
| EndBates | All | Control Numbers. |
| BegAttach | All | Control Numbers (First production Bates number of the first document of the family). |
| EndAttach | All | Control Numbers (Last production Bates number of the last document of the family). |
| Custodian | All | Custodian name (ex. John Doe). |
| DupCust, CustodianOther, or CustodianAll | All | All custodians who were in possession of a de-duplicated document besides the individual identified in the "Custodian" field. |
| LogicalPath | All ESI Items | The directory structure of the original file(s). Any container name is included in the path. |
| Hash Value | All | The MD5 or SHA-1 hash value. |
| NativeFile | All | Native File Link. |
| Email Thread ID | Email | Unique identification number that permits threading of email conversations.  For instance, unique MS Outlook identification number ("PR_CONVERSATION_INDEX") is 22 bytes in length, followed by zero or more child blocks each 5 bytes in length, that facilitates use of email threading. |
| EmailSubject | Email | Subject line of email. |
| DateSent | Email | Date email was sent. |
| DateMod | Email, Edoc | Date the document was modified. |
| TimeSent | Email | Time email was sent. |
| TimeZoneUsed | All | Time zone used to process data during document collection and processing. |
| ReceiveTime | Email | Time email was received. |
| To | Email | All recipients that were included on the "To" line of the email. |
| From | Email | The name and email address of the sender of the email. |
| CC | Email | All recipients that were included on the "CC" line of the |

---

[1] Field Names can vary from system to system and even between different versions of systems. Thus, Parties are to be guided by these Field Names and Field Descriptions when identifying the metadata fields to be produced for a given document pursuant to this ESI Protocol & Search Methodology Order.

STIPULATED PROTOCOL AND [PROPOSED] ORDER FOR DISCOVERY OF
ELECTRONICALLY STORED INFORMATION AND PAPER DOCUMENTS
AND SEARCH METHODOLOGY
CASE NO. 23-CV-01145-TLT

| Field Name[1] | Populated For (*Email, Edoc, Calendar, Contact, Cellphone, or All*) | Field Description |
|---|---|---|
| | | email. |
| BCC | Email | All recipients that were included on the "BCC" line of the email. |
| DateCreated | Edoc | Date the document was created. |
| FileName | Email, Edoc | File name of the edoc or email. |
| Title | Edoc | Any value populated in the Title field of the document properties. |
| Subject | Edoc | Any value populated in the Subject field of the document properties. |
| Author | Edoc | Any value populated in the Author field of the document properties. |
| DocExt | All | File extension of the document. |
| TextPath | All | Relative path to the document level text file. |
| Redacted | All | "X," "Y," "Yes," and "True" are all acceptable indicators that the document is redacted. Otherwise, blank. |
| Withheld Placeholder | All | To the extent a document is fully withheld (on the basis of privilege or otherwise), this field must be populated with a "Y." |
| Privilege Asserted | All | To the extent a document has been withheld on the basis of privilege or redacted on the basis of privilege, the text pertaining to such assertion of privilege shall be included as a metadata field (*e.g.*, "Redacted – Attorney Client Privileged" or "Withheld – Attorney Client Privileged"). |
| Paper | All | "Y" if document is scanned from hard copy in connection with the collection and production of documents in this matter. |
| Confidentiality | All | Indicates if document has been designated as "Confidential" or "Highly Confidential" under the Protective Order. |
| Attachment Count | Email, Edoc | Identifies the number of attachments to an email (if present/applicable). |
| Page Count | All | Indicates the number of pages within the document. |
| Attachment Names | Email, Edoc | Identifies the file names of all attachments to an email (if present/applicable). |

17
STIPULATED PROTOCOL AND [PROPOSED] ORDER FOR DISCOVERY OF
ELECTRONICALLY STORED INFORMATION AND PAPER DOCUMENTS
AND SEARCH METHODOLOGY
CASE NO. 23-CV-01145-TLT-PHK

| Field Name[1] | Populated For (*Email, Edoc, Calendar, Contact, Cellphone, or All*) | Field Description |
|---|---|---|
| Calendar Date Begin | Calendar | Identifies the begin date of a calendar entry (if present). |
| Calendar Date End | Calendar | Identifies the end date of a calendar entry (if present). |
| Calendar Time Begin | Calendar | Identifies the begin time of a calendar entry (if present). |
| Calendar Time End | Calendar | Identifies the end time of a calendar entry (if present). |
| Production Volume | All | Identifies the unique production volume ID of the delivery (*e.g.*, ABC001). |
| Is Hyperlinked | Email, Edoc | Descriptor for documents that are shared via hyperlink within another document as distinct from embedded or attached documents (where applicable). |

18
STIPULATED PROTOCOL AND [PROPOSED] ORDER FOR DISCOVERY OF
ELECTRONICALLY STORED INFORMATION AND PAPER DOCUMENTS
AND SEARCH METHODOLOGY
CASE NO. 23-CV-01145-TLT-PHK

1

2

## **ATTORNEY ATTESTATION**

3

I, Ari Holtzblatt, am the ECF User whose ID and password are being used to file this joint

4

stipulation.  In compliance with Civil Local Rule 5-1(i)(3), I hereby attest that concurrence in the

5

filing of this document has been obtained from each signatory.

6

7

8

Dated:  August 22, 2024                                  By:    */s/ Ari Holtzblatt*
                                                                        Ari Holtzblatt

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

19

STIPULATED PROTOCOL AND [PROPOSED] ORDER FOR DISCOVERY OF
ELECTRONICALLY STORED INFORMATION AND PAPER DOCUMENTS
AND SEARCH METHODOLOGY
CASE NO. 23-CV-01145-TLT-PHK